A02A1782. ADAMS v. ADAMS.
(580 SE2d 261)

PHIPPS, Judge.

Charles Adams sued his brother, Thomas Adams, and Thomas's wife, Joann Adams, to recover a house and surrounding acreage which Charles and Thomas's mother, Ruth Adams, had conveyed to Thomas prior to her death. The trial court awarded summary judgment to Charles against Joann based on her failure to answer the complaint and respond to discovery requests. Among other things, Joann claims that she was not properly served with the complaint or with the discovery material. Resolving these issues and others against Joann, we affirm.

Ruth Adams died in 1995, survived by her sons Charles Adams, Thomas Adams, and Raymond Adams. In 1994, she had executed a quitclaim deed conveying her interest in the property to Thomas and Raymond. As administrator of Ruth's estate, Charles sued to set aside the quitclaim deed and have the property awarded to the estate. He alleged that when his mother executed the quitclaim deed she was mentally incompetent because she was suffering from dementia due to Alzheimer's disease and that her execution of the deed resulted from undue influence exerted by his brothers. Thomas and Joann were sued because they had become joint owners of the

property. It is located on Mary Sapphire Road in Dawson County and had become Thomas and Joann's marital residence. This is the third lawsuit involving these parties and the issue of title to the subject property.

In 1997, Charles brought the first suit against Raymond, Thomas, and Joann. After Charles's motion for summary judgment was denied, he dismissed the case without prejudice. He later reached a settlement with Raymond, who executed a quitclaim deed transferring his interest in the property to Charles.

In 1999, Charles filed a second complaint against Thomas and Joann. Prior to trial, Charles voluntarily dismissed the complaint without prejudice pursuant to an agreement entered into between himself, Thomas, and Joann on March 9, 2000. In the agreement, the parties acknowledged that the applicable statute of limitation had expired on February 4; and Thomas and Joann agreed not to raise the running of the statute of limitation as a defense if Charles refiled the action by September 9, i.e., within six months from the date of the agreement. The parties further agreed to attend mediation. According to Charles's attorney, Martin Valbuena, the parties attended mediation as late as September 5, without reaching a final settlement.

Three days later, on September 8, Charles brought this suit against Thomas and Joann. Valbuena testified that when the complaint was filed, he sent a copy to Thomas and Joann's attorney, Jeffrey Cox, because Cox had agreed to acknowledge service on their behalf. Cox, however, denies that he agreed to acknowledge service; and in late January 2001, Valbuena learned that Cox had not filed an acknowledgment of service. As a result, copies of the summons and complaint were forwarded to the Dawson County Sheriff's Office for service.

Thomas was personally served with process at his and Joann's residence on February 2, 2001. Service was simultaneously effected on Joann by delivering her copy of the summons and complaint to Thomas.

Valbuena testified that on February 5, 2001, he received a telephone call from Cox, who related that Thomas and Joann had had a falling out and had become adversarial to each other, and that if they did not resolve their differences he would need to withdraw. On February 6, Cox sent Joann a letter at the Mary Sapphire Road address informing her of his desire to withdraw as her attorney due to a potential conflict. In the letter, Cox told Joann that she had the burden of keeping the court informed as to where notices, pleadings, and other papers should be served, and that all further notices would be made upon her at her last known address. Joann received and signed for the letter on February 7. On March 2, Cox filed a motion to with-

draw, and on March 8 the court entered orders granting Cox's motions to withdraw as counsel for both Thomas and Joann.

Neither Thomas nor Joann responded to Charles's third complaint, and on May 12, Charles served interrogatories, requests for production of documents, and requests to admit on Thomas and Joann through the mail in an envelope addressed to them both at the Mary Sapphire Road residence. Although these papers were clearly identified as discovery requests, the certificate of service filed on May 16 contained a clerical error incorrectly identifying the papers as discovery responses. Neither Thomas nor Joann responded to the discovery requests, even though on July 10, Christina Wagner filed an entry of appearance as Joann's attorney.

On October 9, Charles moved for summary judgment on the ground that Thomas's and Joann's failure to respond to the requests for admissions resulted in admission of the matters set forth in the requests, thereby resolving issues of fact in Charles's favor. Although Thomas did not respond to Charles's motion for summary judgment, Joann filed a response on November 7, arguing she had not been properly served with either the complaint or the discovery requests. To support her argument as to the invalidity of service of the complaint, Joann submitted her own affidavit, as well as affidavits executed by her former attorney Cox. In her affidavit, Joann testified that when Thomas was served on February 2, his interests in the litigation had become adverse to hers, and that he never provided her with a copy of the summons or complaint. In his affidavit, Cox testified that after the complaint in this case was filed, Thomas decided to support Charles in the litigation and that Charles's attorney Valbuena was aware of this prior to service of the complaint on Thomas on February 2. On November 12, Joann moved for summary judgment, arguing that by delaying service of process until approximately six months after the complaint was filed, Charles was guilty of laches.

A hearing on the parties' cross-motions for summary judgment was held on February 20, 2002. Charles did not file his discovery documents with the court until the date of the hearing. On March 4, the trial court entered an order granting Charles's motion for summary judgment. Citing a line of cases represented by *Wolfe v. Rhodes*,[1] the court ruled that Joann was properly served through process left with her husband Thomas at their marital residence. Among other things, the court also ruled that Joann's assertion of the defense of lack of personal jurisdiction due to Charles's laches in perfecting service was not timely.

---

[1] 166 Ga. App. 845 (305 SE2d 606) (1983).

On or about March 21, Joann for the first time filed an answer to the complaint and a motion to withdraw her admissions, among other things. As support, she introduced an affidavit in which Thomas testified that "[i]n the early part of 2001," Valbuena informed him over the telephone that Charles would grant him a life estate in the property if he would assist Charles in the litigation against Joann, and that he informed Charles within the week that he would accept the settlement offer. In his affidavit, Thomas further averred that around the time he accepted the life estate, he and Joann became estranged and hostile toward one another, and that he had no recollection of giving her a copy of the complaint or the discovery material.

1. Joann first contends that the trial court erred in ruling that she was validly served with process.

Charles effected service of process on Joann through substituted service on Thomas pursuant to OCGA § 9-11-4 (e) (7), which allows a complaint and summons to be served on the defendant "by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." Joann argues that Thomas was not a person of suitable age and discretion because, when service was effected, he had taken an interest in the litigation adverse to hers, hostilities between the two of them were raging, they were living in a state of separation within their house, and he did not inform her of the fact that the complaint had been served.

Although Cox provided conclusory testimony that prior to February 2, 2001, Charles and his attorney Valbuena were aware that Thomas had decided to support Charles in the litigation, Cox did not move to withdraw as counsel until shortly after service was effected on Thomas; and the only reason Cox gave for his withdrawal was a "potential conflict" between his clients. Moreover, in his affidavit, Thomas did not specify whether negotiation of the settlement agreement took place prior to his being served with the complaint, and no settlement agreement between Thomas and Charles was admitted in evidence. Under the circumstances, the evidence of record does not demand a finding that Thomas's and Joann's interests were adverse when service was effected. Service upon the one spouse, Joann, could thus be accomplished by leaving copies thereof with the other spouse, Thomas, at their marital residence, even though the two had become hostile toward one another and estranged.[2] Where service is properly

---

[2] See id.

made in accordance with statutory provisions, it is immaterial that the notice was not received.[3]

2. Joann contends that the trial court erred in ruling that she was validly served with the discovery requests.

The Civil Practice Act requires discovery requests to be served upon "each of the parties."[4] Joann argues that the discovery requests in this case were not served on "each" defendant, because Charles placed one set of discovery documents into a single envelope addressed to both Thomas and Joann at their marital residence. The record, however, shows that although the discovery material was placed in a single envelope addressed to Thomas and Joann at their marital residence, two sets of discovery requests were enclosed. Consequently, the requirement that the discovery material be served upon "each" defendant was satisfied.

3. Joann contends that the court erred in ruling that she and Thomas should be held jointly and severally liable for any debt which they incurred using the subject property as collateral.

Among other things, Charles alleged in the complaint that following his mother's death in 1995, Thomas and Joann used the property as collateral for several debts, specifically a $49,400 loan from the National Lending Center in 1996. In his motion for summary judgment, Charles asked that Thomas and Joann be declared jointly and severally liable for all such debts.

Joann argues that her default did not authorize the relief awarded, because the complaint failed to allege that the loans were not used for the improvement of the property or that she and Thomas had used the money from the loans for their own benefit. We find no merit in this argument. If they had used the loans to improve the property, that would have been a proper matter for them to raise as a defense. A party who holds title to property that rightfully belongs to another should be presumed liable for debts incurred by using the property as collateral during the period of wrongful possession.

4. Joann contends that the May 16 certificate of service's erroneous reference to the May 12 discovery documents as discovery responses, rather than discovery requests, invalidated service of the discovery material.

There is no merit in this contention, as it is well established that clerical errors in the proof of service do not affect the validity of service.[5] Moreover, the recipients of the discovery material could not have been misled by misidentification of the discovery documents in

---

[3] *Stubbs v. State*, 202 Ga. App. 670 (415 SE2d 486) (1992).

[4] See OCGA § 9-11-5 (a); *Tyson v. Automotive Controls Corp.*, 147 Ga. App. 409 (1) (249 SE2d 99) (1978).

[5] See OCGA § 9-11-5 (b); *Roberts v. Roberts*, 226 Ga. 203, 205 (1) (173 SE2d 675) (1970).

the certificate of service, as the discovery documents themselves were properly identified as discovery requests. And even though the May 16 certificate of service incorrectly referred to the documents as discovery responses, an amended certificate of service filed on February 20, 2002, corrected the clerical error.

5. Joann contends that Charles should have been prohibited from relying on the discovery documents because he did not file them until the summary judgment hearing, rather than contemporaneously with his motion for summary judgment as required by OCGA § 9-11-29.1.

Under OCGA § 9-11-29.1 (a) (5), however, "the trial court has the discretion to allow the untimely filing of discovery material upon a showing 'that sufficient reasons exist to justify that late filing and use and that the late filing and use will not constitute surprise or manifest injustice to any other party in the proceedings.' "[6] Here, the trial court allowed the late filing of the discovery documents because Charles gave Joann notice in his motion for summary judgment that he was relying on such material and, in her response to the motion for summary judgment, she did not complain that the documents had not been filed with the court. We find no abuse of discretion.

6. Joann contends that the court erred in failing to consider the motions and pleadings filed by her after Charles's motion for summary judgment was granted.

As to this we find no error, because proceedings in the trial court are terminated by the entry of a final judgment,[7] and summary judgment which disposes of the entire case constitutes a final judgment.[8]

7. Finally, Joann contends that the court erred in ruling that she did not timely assert her defense of lack of personal jurisdiction due to Charles's laches in perfecting service.

The defenses of lack of jurisdiction over the person, insufficiency of process, and insufficiency of service of process must be raised by a defendant in his or her initial responsive pleading,[9] which, in this case, was Joann's response to Charles's motion for summary judgment. Because Joann did not raise her defense of lack of personal jurisdiction based on Charles's delay in perfecting service until she moved for summary judgment, the court did not err in ruling that she waived this defense.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

---

[6] (Citations and emphasis omitted.) *Connell v. Houser*, 189 Ga. App. 158-159 (2) (375 SE2d 136) (1988).

[7] *Nairon v. Land*, 242 Ga. App. 259, 260 (1) (529 SE2d 390) (2000).

[8] *Vann v. Billingsley*, 234 Ga. App. 803, 804 (508 SE2d 180) (1998) (physical precedent only).

[9] OCGA § 9-11-12 (b); see *Chen v. Alexander Terry Assoc.*, 228 Ga. App. 345, 347 (491 SE2d 834) (1997).

DECIDED MARCH 13, 2003 —
RECONSIDERATION DENIED MARCH 27, 2003.

*Christina D. Wagner,* for appellant.
*Peter M. Blackford, Martin E. Valbuena,* for appellee.